**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SHELLY WICKLUND, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION NO.: |
| v. | CLASS ACTION COMPLAINT |
| CUISINART, INC., | JURY TRIAL DEMANDED |
| Defendant. | AUGUST 2, 2018 |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Shelly Wicklund ("Plaintiff"), on behalf of herself and all others similarly situated, through their undersigned counsel, bring this Class Action Complaint ("Complaint") against Defendant Cuisinart, Inc. ("Cuisinart"). The following allegations are based upon investigation by Plaintiff's counsel and upon personal knowledge as to Plaintiff's own facts.

### I. NATURE OF THE ACTION

1.     According to Cuisinart, its pressure cookers are "*safe*, easy to use, cooks up to 70% faster than conventional methods and cooks healthier too."[1] Cuisinart's pressure cookers operate in the following manner: "[s]team strapped in the pot builds up pressure that creates hotter temperatures, *and the pot is so tightly sealed* that vitamins and minerals can't boil away."[2] Cuisinart emphasizes the safety of its pressure cookers, claiming that they are "*absolutely safe, with a lid that has to be locked in place before pressure builds and stays locked until pressure is released.*"[3]

---

[1]  https://www.cuisinart.com/products/specialty_appliances/cpc-600/ (last visited February 23, 2018) (emphasis added)

[2] *Id*. (emphasis added)

[3] *Id*. (emphasis added)

2.      Despite Cuisinart's claims that its pressure cookers are safe, it designed, manufactured, marketed, and sold online or through third-party retailers a high-powered pressure cooker called the "Cuisinart Electric Pressure Cooker, CPC-600 Series" (hereinafter, the "Pressure Cooker"), that suffers from a serious and dangerous defect.

3.      Specifically, during ordinary and routine operation, the Pressure Cooker generates extreme heat and steam. According to the Owner's Manual accompanying the Pressure Cooker and available online, one of its "safety features" is that "the appliance will not start pressurizing until the lid is closed and locked properly."[4] Cuisinart emphasizes this point elsewhere in the manual, stating that "[t]he lid is double-locked and cannot be opened [when pressurized]."[5] When the defect manifests itself, however, the built-up pressure and steam remain trapped inside the Pressure Cooker yet the lid *can* be opened by the consumer, causing the Pressure Cooker's scalding hot contents to burst and erupt from the appliance, resulting in significant and painful personal injury to the consumer.

4.      This defect includes, without limitation, a defective lid locking mechanism. Namely, the lid locking safety feature of the Pressure Cooker is easily overcome, allowing the lid to be rotated and removed when there is still pressure inside the unit. Another Defect involves the ability of the Pressure Cooker to fully pressurize without the lid being securely attached, which can result in the lid explosively separating from the cooker without warning. The internal pressure can cause the contents to erupt from the Pressure Cooker when it is being used for its intended purpose, discharging the scalding hot contents onto unsuspecting consumers (hereinafter, the "Defect"), resulting in significant injuries. Regardless of whether the Defect manifests itself, for all Pressure Cookers sold by Cuisinart, the Defect poses a serious safety risk to consumers and the public.

---

[4] Exhibit A (Cuisinart Electric Pressure Cooker Instruction Booklet)

[5] *Id.*

5.     The Pressure Cooker models at issue in this case include, but are not limited to, the Cuisinart Model Number CPC-600 Series and all other Cuisinart Electric Pressure Cooker models sold by Cuisinart with a substantially similar design.

6.     At all relevant times, Cuisinart knew or should have known of the Defect but nevertheless sold the Pressure Cookers to consumers, failed to warn consumers of the serious safety risk posed by the Defect, and failed to recall the dangerously defective Pressure Cookers despite the risk of significant injuries to consumers as well as the failure of the product to perform as promised.

7.     As a direct and proximate result of Cuisinart's concealment of the Defect, failure to warn customers of the Defect and of the inherent safety risk posed by the Pressure Cookers, failure to remove the defective Pressure Cookers from the stream of commerce, and failure to recall or remedy the Defect, Plaintiff purchased and used Cuisinart's defective and unsafe Pressure Cooker when she otherwise would not have made such a purchase or would not have subsequently used the Pressure Cooker.

8.     Plaintiff's Pressure Cooker failed as a result of the Defect when Plaintiff was able to open the lid to her Pressure Cooker despite the contents still being pressurized, causing the scalding hot contents to erupt from the appliance and onto her, and resulting in painful personal injury.

9.     Plaintiff's and all Class Members' Pressure Cookers contain the same Defect posing the same substantial safety risk to consumers and the public. Cuisinart's Pressure Cooker cannot be used safely for its intended purpose of preparing meals at home.

## II. JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 Members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00, exclusive of interest and

costs, and this is a class action in which Cuisinart and more than two-thirds of the proposed plaintiff class are citizens of different states.

11.     This Court may exercise general jurisdiction over Cuisinart because it has located its American headquarters in Connecticut; it is registered to conduct business in Connecticut.

12.     In addition, Cuisinart has sufficient minimum contacts in Connecticut, as they intentionally avail themselves of the markets within Connecticut through the promotion, sale, marketing, and distribution of their pressure cooker products, thus rendering the exercise of jurisdiction by this Court proper and necessary.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Cuisinart is headquartered in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

14.     Plaintiff Shelly Wicklund is a resident and citizen of Davison County, South Dakota. In December 2015, Plaintiff purchased a new Cuisinart Electric Pressure Cooker, Model Number CPC-600, from Focus Camera LLC.

15.     Defendant Cuisinart is a for-profit corporation, organized and existing under the laws of the State of Delaware. Cuisinart has its principal office in the Stamford, Connecticut. Cuisinart designs, manufactures, markets, and sells the Pressure Cooker online and through third-party retailers throughout the United States.

## IV. FACTUAL ALLEGATIONS

16.     Cuisinart is engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling the Pressure Cooker.

17.     The Pressure Cooker is used for food preparation by means of boiling liquids inside a sealed vessel that produces steam, which is trapped inside to create pressure and superheat the contents. The resulting temperatures are intended to reduce cooking time while retaining more nutrients than is possible with other cooking methods.

4

18.     In the Pressure Cooker's Owner's Manual and other written documents authored by Cuisinart, Cuisinart expressly warrants that the Pressure Cooker is free from defects and is manufactured from merchantable materials and workmanship.

19.     Because "[a]ny pressure in the cooker can be hazardous," Cuisinart emphasizes that "the lid is double-locked and cannot be opened. **YOU SHOULD NEVER ATTEMPT TO OPEN THE LID WHILE PRESSURE COOKING.**"[6] Unfortunately for Plaintiff and other Class Members, this safety feature is not present or fails to work as intended in the Pressure Cookers.

20.     As part of its marketing efforts, Cuisinart provides retailers with production descriptions of the Pressure Cookers. The product description provided by Cuisinart to Bed Bath and Beyond for the same model as purchased by Plaintiff affirms that the Pressure Cookers were "imported" and that "[f]or safety, pressure will not build if lid is not locked in place, and lid will stay locked until all pressure is released."[7] This description of the Pressure Cooker is uniform in marketing materials provided by Cuisinart to its product retailers.[8]

21.     Plaintiff and the Class purchased their Pressure Cookers reasonably believing they were properly designed and manufactured, free from defects, and safe for their intended use.

22.     Plaintiff and the Class used their Pressure Cookers for their intended purpose of preparing meals at home in a manner reasonably foreseeable by Cuisinart. Plaintiff and the Class,

---

[6] Ex. A (emphasis in original)

[7]     https://www.bedbathandbeyond.com/store/product/cuisinart-reg-6-quart-electric-pressure-cooker/1014463330?skuId=14463330&mcid=PS_googlepla_brand_googleplascatchall_online&product_id=14463330&adtype=pla&product_channel=online&adpos=1o1&creative=45758750869&device=c&matchtype=&network=g&mrkgadid=2974383472&mrkgcl=609&rkg_id=h-a066034ce6d2b57501fb99636cc69fd4_t1519781632&gclid=EAIaIQobChMI6YSi37vH2QIVFluGCh1j8AAkEAQYASABEgJflvD_BwE

[8]     https://www.amazon.com/dp/B000MPA044/ref=asc_df_B000MPA0445386196/?tag=hyprod-20&creative=394997&creativeASIN=B000MPA044&linkCode=df0&hvadid=167155690034&hvpos=1o3&hvnetw=g&hvrand=396714809807140027&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9041430&hvtargid=pla-273770048371 ("For safety, the cooker must be fully locked for pressure to build, and it will remain locked until the pressure inside drops to zero.")

however, are unable to safely use their Pressure Cookers for their intended purpose, or are required to place themselves and their families at risk when using them, because the Defect renders the Pressure Cooker unsafe by allowing a dangerous level of pressure to accumulate, causing the hot contents to spontaneously erupt out.

23.     The Pressure Cooker suffers from a Defect that poses an unreasonable risk of injury during normal use.

24.     Cuisinart knew or should have known of the Defect and of the serious safety risk it posed to consumers and the public, but chose to conceal knowledge of the Defect from consumers who purchased the Pressure Cooker. Cuisinart continues to remain silent regarding the Defect and continues to sell the Pressure Cooker to unsuspecting consumers.

25.     As a result of Cuisinart's conduct, Plaintiff and the Class have suffered damages, including, without limitation: (a) the purchase price of the Pressure Cooker, as Plaintiff and the Class would not have purchased the product had they been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for the Pressure Cooker; (d) the diminished value of the Pressure Cooker; and (e) the costs of repair or replacement of the Pressure Cooker. In addition, some Members of the Class have suffered damages to real and/or personal property, and damages for personal injuries, recovery of which may not be sought on a classwide basis but provide further evidence of damages suffered by Plaintiff and Class.

## MECHANICS OF THE DEFECT

26.     Cuisinart's Pressure Cooker has a Defect that causes the product to malfunction during its expected useful life.

27.     The Pressure Cooker has two locking features. The first locking feature is the float valve. The float valve as designed, manufactured and distributed by Cuisinart is intended to extend upwards through a clearance hole in the Pressure Cooker's strike plate and lid as the product's pressure begins to build during use. The strike plate is a bent-shaped piece of sheet metal that is housed in the lid portion of the Pressure Cooker. The second locking feature is the locking lugs.

6

The locking lugs are housed on the base of the Pressure Cooker and utilize friction caused by internal pressure that forces the base and the lid together.

28.     Cuisinart intends for the float valve to lock the Pressure Cooker in two ways. First, the float valve is meant by Cuisinart to act as a type of deadbolt to arrest movement by acting as a physical barrier. However, because the float valve cannot sufficiently lock the Pressure Cooker, Cuisinart intends for a second locking feature: the locking pin. The float valve, once extended, is meant by Cuisinart to prevent the locking pin from rotating the lid to the open position. The Pressure Cooker's locking pin moves in and out as it rides along the base's locking lugs. Once the float valve is extended, the float valve is intended to keep the locking pin from extending outward along the locking lugs, thus keeping it in place and "locking" the Pressure Cooker.

29.     However, the locking pin does not prevent the Pressure Cooker's lid from opening while the unit is pressurized. The locking pin itself is composed of a piece of plastic, which may be broken when rotating the lid using ordinary force. Further, the strike plate's bent-shape sheet metal construction allows for excessive clearances and is very flexible. Both of these deficiencies of the lid-locking mechanism constitute the Defect.

30.      The Defect allows the lid locking safety feature of the Pressure Coker to be easily overcome, allowing the lid to be rotated and removed when there is still pressure inside the unit. Additionally, upon information and belief, the Pressure Cooker is able to be fully pressurized without the lid being securely attached and can result in the lid explosively separating from the Pressure Cooker unexpectedly. Neither of Cuisinart's lid locking features prevent the Defect from allowing the lid to be removed when the Pressure Cooker is pressurized. The internal pressure can cause the contents to erupt from the Pressure Cooker when it is being used for its intended purpose, discharging the scalding hot contents onto unsuspecting consumers, resulting in significant injuries.

31.     The Defect exists at the point of sale and in every Pressure Cooker regardless of consumer conduct.

32.    The Defect, which allows users to open the Pressure Cooker while it still contains pressure, demonstrates the ineffectiveness of the "lid safety device" that Cuisinart touts as one of the Pressure Cookers' built-in safety features.

33.    The Defect manifests itself during the expected useful lives of the Pressure Cooker, within and without the warranty periods, preventing the Pressure Cooker from being used as intended, and creating an unreasonable risk of personal injury.

## PLAINTIFF WICKLUND'S EXPERIENCE

34.    On or about December 29, 2015, Plaintiff purchased a Pressure Cooker from Focus Camera, LLC for herself.

35.    Prior to her purchase, Plaintiff conducted extensive research online comparing the safety of Cuisinart's Pressure Cooker to other pressure cookers. Plaintiff researched consumer reviews of the Pressure Cooker and thoroughly reviewed the Pressure Cooker's safety mechanisms and features. Plaintiff paid particular attention to the Pressure Cooker's locking mechanism that would allow her to use the Pressure Cooker safely.

36.    Before using her Pressure Cooker for the first time, Plaintiff read the Owner's Manual more than once. After reading and relying on the Pressure Cooker's Owner's Manual, Plaintiff used the Pressure Cooker on a number of occasions to successfully make a variety of meals for herself and her family.

37.    In March of 2016, Plaintiff sat her Pressure Cooker on the kitchen countertop to prepare chili for her family. Having read and understood the instructions and having relied on Cuisinart's representations that the product was safe, functional, and ready for use, she placed the ingredients inside the Pressure Cooker, selected the cook time, and began cooking her food.

38.     At the conclusion of the cook cycle, the Pressure Cooker beeped to signal the cooking process was complete.[9] Thus, according to the instructions in the Owners' Manual, Plaintiff believed her Pressure Cooker was safe to open.

39.     However, Plaintiff's Pressure Cooker was not safe to open. Unbeknownst to her, the Pressure Cooker still retained a significant and dangerous amount of pressure inside the appliance. Turning the lid using one hand and exerting ordinary force as she had done on multiple prior occasions, Plaintiff began to open the pressure cooker's lid. While she was turning, the Pressure Cooker exploded, spewing the scalding hot contents out. The hot chili, including meat, beans, tomatoes and other ingredients, sprayed all over Plaintiff (especially her right arm, chest, neck, and face), and her kitchen, including the floor, ceiling, countertops, refrigerator, and upper cabinets.

40.     As a result of hot contents coming into contact with her skin, Plaintiff suffered burns on her arms, neck, chest, and face.

41.     Upon information and belief, the "safety" locking mechanism on her Pressure Cooker had not properly engaged, which enabled her to open the Pressure Cooker despite the significant amount of pressure that remained inside.

42.     On August 24, 2017, Plaintiff contacted Cuisinart's customer service department via email to inform them that her pressure cooker had exploded and that she suffered burns as a result. Cuisinart never responded to Plaintiff's correspondence.

43.     As a result of the Defect, Plaintiff has suffered damages including but not limited to loss of the benefit of her bargain; expenditure of the purchase price of the Pressure Cooker, which she would not have purchased had she been informed of the Defect; her overpayment for the Pressure Cooker which did not perform as advertised or warranted; the diminished value of her

---

[9] Ex. A, p. 5 ("Following pressure cooking you will hear a series of beeps indicating the process is finished").

Pressure Cooker; and the costs of repair or replacement of the Pressure Cooker should she choose to cook foods in this manner in the future.

## CUISINART'S CONDUCT

44.     Cuisinart failed to adequately design, manufacture, and/or test the Pressure Cooker to ensure it was free from the Defect before offering it for sale to Plaintiff and the Class, despite its duty to do so.

45.     The Defect poses a serious and immediate safety risk to consumers and the public and has caused or will cause Plaintiff's and Class Members' Pressure Cookers to fail during their expected useful lives.

46.     Cuisinart's Pressure Cooker should have been usable for its intended purpose during its expected useful life. The Defect, however, existed at the time that the Pressure Cooker was sold to Plaintiff and the Class, and the Defect immediately rendered the Pressure Cooker unfit for the ordinary and intended purpose for which it is marketed and sold.

47.     If the Pressure Cooker did not suffer from the Defect, Plaintiff and the Class would not have suffered the damages set forth in this Complaint.

48.     Cuisinart has a duty to protect consumers by warning them that the Defect poses unreasonable risks of personal injury and/or property damage.

49.     Nonetheless, even though Cuisinart knew or should have known of the Defect, it chose to conceal the existence of the Defect, continued to sell the Pressure Cooker, and failed to remove the Pressure Cooker from the marketplace. Cuisinart took these actions to realize the substantial financial benefits of selling the defective Pressure Cooker to the unsuspecting public.

50.     Cuisinart knew or should have known that consumers including Plaintiff and the Class: (a) were unaware of the Defect and could not reasonably be expected to discover the Defect until their Pressure Cookers failed; (b) expected to use the Pressure Cooker in their homes without putting their safety and property at risk; and (c) expected Cuisinart to disclose any Defect that

would prevent the Pressure Cooker from safely performing its intended purpose, as such disclosure by Cuisinart would impact a reasonable consumer's decision whether to purchase the Pressure Cooker.

51.     As a result of Cuisinart's concealment of the Defect, Class Members remain unaware of the existence of the Defect and that it poses an unreasonable risk of personal injury and/or property damage during normal use.

52.     Had Plaintiff and Class Members been made aware of the Defect, they would not have purchased the Pressure Cooker or would have paid significantly less for it.

## CUISINART'S KNOWLEDGE OF THE DEFECT

53.     Cuisinart knew or should have known when it sold the Pressure Cooker to the public that it suffered from the Defect, and that the Defect caused the Pressure Cooker to function improperly during its expected useful life, represented an unreasonable risk that the Pressure Cooker would erupt and discharge scalding hot liquids and contents, and might result in significant personal injury and/or property damage to consumers and the public.

54.     Cuisinart's knowledge of these facts is established through, *inter alia*, online postings complaining that the Pressure Cooker failed during normal use. For example, one consumer noted:

> [On December 11, 2016,] I made chili in my Cuisinart electric pressure cooker. I understand how to use it and had used it before. When the chili was done, I released the steam/pressure with the release valve until it was no longer steaming. I released the valve a second time to check that all pressure was released. I twisted the lid to open it (and I did not have to force the lid) and boiling hot chili exploded all over my arm, chest, and our brand new kitchen. It was under so much pressure, the contents spewed onto the ceiling, cupboards, and across the room as well. I immediately began first aid as I am an RN, but still sustained deep second degree burns requiring weeks of medical care and ending in large scarring on my arm! Emails (x3) and phone calls (x2, where I spoke with a representative) resulted in no contact [from] the company. I am concerned others will be injured as well!![10]

---

[10] https://www.saferproducts.gov/ViewIncident/1631218.

55.     Despite its knowledge, Cuisinart did not remedy or eliminate the Defect in the Pressure Cooker or remove it from the stream of commerce.

56.     In conjunction with Cuisinart's experience designing and selling the Pressure Cooker, these facts illustrate that Cuisinart knew or should have known of the Defect.

57.     Cuisinart has a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members. Cuisinart's failure to disclose, or active concealment of, the Defect places Plaintiff and Class Members at risk of personal injury and/or property damage.

58.     Cuisinart is currently still selling the defective Pressure Cooker, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Pressure Cooker.

59.     Moreover, Cuisinart continues to falsely represent through written warranties that the Pressure Cooker is free from defects and is of merchantable quality.

60.     When corresponding with customers, Cuisinart does not disclose that the Pressure Cooker suffers from the Defect. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase and use, the Pressure Cookers in their homes even though it is unsafe to do so.

61.     Cuisinart has wrongfully placed on Plaintiff and Class Members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Pressure Cooker, and paying for the cost of damages caused by the Defect.

## CLASS ALLEGATIONS

62.     Plaintiff brings this action against Cuisinart individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of a Nationwide Class:

> *All persons in the United States who own a Cuisinart Model Number CPC-600 Series and or other Cuisinart Electric Pressure Cooker models sold by Cuisinart with a substantially similar design.*

63.     Plaintiff brings this action against Cuisinart individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of a South Dakota Class:

*All persons in the South Dakota who own a Cuisinart Model Number CPC-600 Series and or other Cuisinart Electric Pressure Cooker models sold by Cuisinart with a substantially similar design.*

64.     The Nationwide Class and the South Dakota Class are collectively referred to herein as the "Class" or "Classes." Excluded from the Classes are: (a) any judge presiding over this action and Members of their family; and (b) all officers, directors and employees of Cuisinart.

65.     *Numerosity*: The Members of each Class are so numerous that joinder of all Members is impracticable. While the exact number of Class Members is presently unknown, each Class consists of thousands of people. The exact number of Class Members can be determined by Cuisinart's sales information and other records.

66.     *Commonality*: Common questions of law and fact exist as to all Members of each Class, including, without limitation:

    a.     Whether the Pressure Cooker designed and sold by Cuisinart possesses a material defect;

    b.     Whether the Defect creates an unreasonable risk that the Pressure Cookers, with built-up pressure, will be able to be opened and cause the products to fail to be safely used for their intended purpose;

    c.     Whether Cuisinart knew or should have known that the Pressure Cookers possessed the Defect at the time they were placed in the stream of commerce;

    d.     Whether Cuisinart fraudulently concealed the Defect;

    e.     Whether Cuisinart breached express warranties relating to the Pressure Cooker;

    f.     Whether Cuisinart breached implied warranties of merchantability relating to the Pressure Cooker;

    g.     Whether the Defect resulted from Cuisinart's negligence;

    h.     Whether Cuisinart is strictly liable for selling the Pressure Cooker;

    i.     Whether Plaintiff and Class Members are entitled to damages;

    j.     Whether Plaintiff and Class Members are entitled to replacement or repair of their defective Pressure Cooker; and

13

k.   Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction requiring that Cuisinart engage in a corrective notice campaign and/or a recall.

67.   *Typicality*: Plaintiff has the same interest in this matter as all Class Members, and Plaintiff's claims arise out of the same set of facts and conduct by Cuisinart as the claims of all Class Members. Plaintiff's and Class Members' claims all arise out of Cuisinart's design, manufacturing, distribution, and sale of the defective Pressure Cooker that has created a significant safety risk to consumers, and from Cuisinart's failure to disclose the Defect.

68.   *Adequacy of Representation*: Plaintiff is committed to pursuing this action and has retained competent counsel experienced in consumer and product liability class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class Members.

69.   *Injunctive/Declaratory Relief*: The elements of Rule 23(b)(2) are met. Cuisinart will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Cuisinart has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

70.   *Predominance*: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

## TOLLING OF THE STATUTES OF LIMITATIONS

71.     The claims alleged herein accrued upon the discovery of the Defect which manifests itself when the Pressure Cooker fails. Because the Defect is hidden and Cuisinart failed to disclose the true character, nature, and quality of the Pressure Cooker, Plaintiff and the Class Members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation. Thus, any applicable statutes of limitations have been tolled by Cuisinart's knowledge, misrepresentation, and/or concealment and denial of the facts as alleged herein. Plaintiff and the Class Members could not have reasonably discovered the Defect before it manifests. Further, as evidenced herein, Cuisinart, through its correction of the defect in its later Pressure Cooker models, illustrates their knowledge of the Defect. Cuisinart's failure to recall the Pressure Cooker despite this knowledge illustrates their preference of profits rather than consumer safety. As a result of Cuisinart's active and continuing concealment of the Defect, through its own testing mechanisms, consumer complaints, and failure to inform Plaintiff and the Class of the Defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CLAIM FOR RELIEF
### Breach of Express Warranty
### (on behalf of Plaintiff and the South Dakota Class)
### S.D. Codified Laws § 57A-2-313

72.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

73.     In connection with its sale of the Pressure Cooker, Cuisinart expressly warranted that it was free from defects, made for years of dependable operation, and made from merchantable materials and workmanship.

74.     In Cuisinart's "Owner's Manual," which accompanied the sale of the Pressure Cooker to consumers, Cuisinart expressly represented that: "The appliance will not start pressurizing until the lid is closed and locked properly." Ex. A.

75.     Further, the manual expressly represented that "When pressure is fully released, the pressure indicator will drop and the lid will unlock to open." Ex. A.

76.     The Owner's Manual further states: "We warrant that your Cuisinart Electric Pressure Cooker will be free of defects in materials and workmanship under normal home use for 3 years from the date of original purchase." Ex. A.

77.     The Owner's Manual provides: "If your Cuisinart Electric Pressure Cooker should prove to be defective within the warranty period, we will repair it or if we think necessary, replace it." Ex. A.

78.     The Pressure Cooker is defectively designed as a whole unit and is covered by Cuisinart's Limited Warranty, set forth above.

79.     Each Pressure Cooker has an identical or substantially identical warranty.

80.     Plaintiff and the Class have privity of contract with Cuisinart through their purchase of the Pressure Cooker, and through the express written and implied warranties that Cuisinart issued to its customers. Cuisinart's warranties accompanied the Pressure Cooker and were intended to benefit consumers of the Pressure Cooker. To the extent Class Members purchased the Pressure Cooker from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries to the contracts between Cuisinart and third-party retailers.

81.     The express written warranties covering the Pressure Cooker were a material part of the bargain between Cuisinart and consumers. At the time it made these express warranties, Cuisinart knew of the purpose for which the Pressure Cooker was to be used.

82.     Cuisinart breached its express warranties by selling Pressure Cookers that were, in actuality, not free of defects, not made for years of dependable operation, not made from merchantable material and workmanship, and could not be used for the ordinary purpose of safely preparing meals at home. Cuisinart breached its express written warranties to Plaintiff and Class Members in that the Defect with the Pressure Cookers is present at the point of sale, creating a serious safety risk to Plaintiff and Class Members.

16

83.     The Pressure Cookers that Plaintiff and Class Members purchased were subject to the Defect and caused or have the potential to cause significant personal injury.

84.     Cuisinart expressly warranted in writing that it would repair or replace any defect in the Pressure Cooker, or refund the purchase price of the Pressure Cooker if repair or replacement was not feasible.

85.     Following Plaintiff's incident, she contacted Cuisinart customer service via email to report that her pressure cooker had exploded and burnt her. Cuisinart failed to respond and thus did not offer to repair or replace the product.

86.     Cuisinart breached its express warranty to repair or replace the defective Pressure Cooker when it failed to do so, despite its knowledge of the Defect and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Pressure Cooker.

87.     To the extent that Cuisinart has repaired or replaced the defective parts, the warranty of repair or replacement fails in its essential purpose because it is insufficient to make Plaintiff and Class Members whole and/or because Cuisinart has failed to provide the promised remedy within a reasonable time.

88.     Many of the damages resulting from the defective Pressure Cooker cannot be resolved through the limited remedy of repair or replacement, as incidental and consequential damages have already been suffered due to Cuisinart's conduct as alleged herein.

89.     Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of repair or replacement, and they seek all remedies allowed by law.

90.     Upon information and belief, Cuisinart received further notice and has been on notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and its own internal and external testing.

91.     Despite having notice and knowledge of the Defect, Cuisinart failed to provide Defect-free Pressure Cookers to Plaintiff and Class Members, failed to provide free repairs of the

17

defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

92.     As a result of Cuisinart's breach of its express written warranties, Plaintiff and Class Members have suffered damages.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the South Dakota Class)**
**S.D. Codified Laws § 57A-2-314**

93.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

94.     The Pressure Cooker purchased by Plaintiff and Class Members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

95.     All of the Pressure Cookers sold by Cuisinart left Cuisinart's facilities and control with a Defect caused by a defective design incorporated into the manufacture of the Pressure Cookers.

96.     The Defect placed and/or places Plaintiff and Class Members at a serious safety and property damage risk upon using the Pressure Cooker in their homes.

97.     The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Cuisinart and consumers, including Plaintiff and the Class Members.

98.     Notwithstanding the aforementioned duty, at the time of delivery, Cuisinart breached the implied warranty of merchantability in that the Pressure Cooker is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

18

99.    Cuisinart knew, or should have known, that the Pressure Cooker posed a safety risk and was defective at the time it placed the product into the stream of commerce, and that it breached the implied warranties at the time it distributed and/or sold the Pressure Cooker to Plaintiff and Class Members.

100.    Plaintiff and Class Members have privity of contract with Cuisinart through their purchase of the Pressure Cooker from Cuisinart, and through the express written and implied warranties that Cuisinart issued to its customers. Cuisinart's warranties accompanied the Pressure Cooker and were intended to benefit the ultimate consumers. To the extent that Class Members purchased the Pressure Cooker from third-party retailers, privity is not required because Plaintiff and Class Members are intended third-party beneficiaries to the contracts between Cuisinart and the third-party retailers.

101.    As a direct and proximate result of Cuisinart's breach of the implied warranties, Plaintiff and Class Members bought the Pressure Cooker without knowledge of the Defect or the serious safety risks.

102.    As a direct and proximate result of Cuisinart's breach of the implied warranties, Plaintiff and Class Members purchased unsafe Pressure Cookers that were not fit to be used for their intended purpose of preparing food in a residential setting.

103.    Plaintiff notified Cuisinart of its breach of the implied warranties shortly after their Pressure Cookers failed to perform as warranted as a result of the Defect.

104.    Cuisinart received further notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and its own internal and external testing. Cuisinart also received notice through plaintiffs who complained to Cuisinart about the Defect as described above. Despite having notice and knowledge of the Defect, Cuisinart failed to provide Defect-free Pressure Cookers to Plaintiff and Class Members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

105.    As a direct and proximate result of Cuisinart's breach of the implied warranties, Plaintiff and Class Members have suffered damages.

**THIRD CLAIM FOR RELIEF**
**Negligence**
**(On behalf of Plaintiff and the Classes)**

106.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

107.    Cuisinart owed a duty to Plaintiff and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell the Pressure Cooker with reasonable care and in a workmanlike fashion, and also had a duty to protect Plaintiff and Class Members from foreseeable and unreasonable risks of harm. Cuisinart breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and selling the Pressure Cookers.

108.    Cuisinart also acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought.

109.    In addition, at the time the Pressure Cookers left Cuisinart's control without an adequate warning or instruction, they constituted unreasonably dangerous articles that Cuisinart knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable consumer. Cuisinart knew or should have known that the Pressure Cooker it designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold would, during ordinary and foreseeable use, create an unreasonable safety risk and fail to perform as intended.

110.    At the time of the design or manufacture of the Pressure Cooker, Cuisinart acted unreasonably in designing or manufacturing them, and this conduct proximately caused the harm for which damages are sought.

111.    Furthermore, at the time the Pressure Cookers left the control of Cuisinart, it

unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Pressure Cooker. At the time the Pressure Cookers left the control of Cuisinart, their design was so unreasonable that no reasonable person, aware of the relevant facts, would use or purchase them.

112.    Cuisinart knew or should have known that the Pressure Cooker created an unreasonable safety risk as a result of the Defect, and that the Defect could cause personal injury and/or property damage.

113.    Based on its knowledge, Cuisinart had a duty to disclose to Plaintiff and Class Members the serious safety risks posed by the Pressure Cooker, in addition to a duty to disclose the nature of the Defect.

114.    Cuisinart had a further duty not to put the defective products on the market, had a continuing duty to remove its unsafe Pressure Cooker from the market, and also had a duty to seek a recall from consumers.

115.    Cuisinart failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Pressure Cooker by, among other things, failing to design and manufacture the Pressure Cooker in a manner to ensure that, under normal and intended usage, a serious safety risk such as the one posed by the Defect did not occur.

116.    Cuisinart failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, of the Defect.

117.    Cuisinart failed to exercise reasonable care when it knew of the safety risks the Defect posed and actively concealed those risks from Plaintiff and Class Members.

118.    Cuisinart failed to exercise reasonable care when it knew of the safety risks posed by the Defect and failed to replace, repair, or recall Pressure Cookers it knew or should have known were unsafe and defective

119.    As a direct and proximate result of Cuisinart's negligence, Plaintiff and the Class Members bought the Pressure Cooker without knowledge of the Defect or of the serious safety risk, and purchased an unsafe product that could not be used for its intended purpose.

120.    As a direct and proximate result of Cuisinart's negligence, Plaintiff and the Class Members have suffered damages.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the Plaintiff and the Classes)

121.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

122.    This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class Members and Cuisinart do not govern the subject matter of the disputes with Cuisinart, or that Plaintiff does not have standing to assert any contractual claims against Cuisinart.

123.    Plaintiff and Class Members conferred a benefit on Cuisinart, and Cuisinart had knowledge of this benefit. By its wrongful acts and omissions described herein, including selling the defective Pressure Cooker, Cuisinart was unjustly enriched at the expense of Plaintiff and Class Members.

124.    Plaintiff's and Class Members' detriment and Cuisinart's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

125.    It would be inequitable for Cuisinart to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Pressure Cooker.

126.    Plaintiff and Class Members seek restitution from Cuisinart and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Cuisinart from its wrongful conduct, and establishing a constructive trust from which Plaintiff and Class

Members may seek restitution.

## FIFTH CLAIM FOR RELIEF
### Strict Product Liability–Manufacturing and Design Defect and Failure to Warn
### (On behalf of Plaintiff and the South Dakota Class)
### S.D. Codified Laws § 20-9-9

127.     Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

128.     Cuisinart designed, developed, tested, manufactured, distributed, marketed, and/or sold the Pressure Cooker to Plaintiff and the Class.

129.     The Pressure Cookers were defective in their manufacture and design, and contained the Defect when they left Cuisinart's control.

130.     Cuisinart could have implemented or adopted reasonable and feasible alternative designs, materials, and/or manufacturing methods to remedy the Defect but failed to do so. This is evidenced by their resolution of the Defect in subsequent Pressure Cooker models.

131.     The risk of harm associated with the Pressure Cooker outweighs its intended and foreseeable benefit. The ability to quickly prepare meals at home does not outweigh the risk of the Pressure Cooker erupting and inflicting significant personal injury.

132.     Cuisinart's Pressure Cooker reached Plaintiff and the Class Members in the same condition as when it left Cuisinart's control.

133.     Cuisinart knew or should have known that the Pressure Cookers were defective and posed a real risk of trapping built-up pressure and erupting during their regular use.

134.     The Pressure Cooker was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

135.     Plaintiff and the Class Members were unaware of the risk of harm posed by the Pressure Cooker.

136.     Cuisinart failed to inform Plaintiff and Class Members as to the Pressure Cooker's susceptibility to erupt, causing scalding hot contents to discharge, resulting in significant personal

23

injury and/or property damage.

137.    Cuisinart failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Pressure Cooker would erupt and in light of the serious harm that may result from the Defect.

138.    The Pressure Cooker was defective due to inadequate warnings, inadequate inspection and testing, and/or inadequate reporting concerning the results of quality control testing, or lack thereof.

139.    Had Plaintiff and Class Members been adequately warned concerning the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing them.

140.    Upon learning that its Pressure Cooker could trap built-up pressure and erupt, Cuisinart had a duty to warn consumers of the possibility that the Defect could cause severe injury to persons and/or property, even when used for their intended purpose.

141.    As a direct and proximate result of the defective condition of the Pressure Cooker, Plaintiff and Class Members have incurred or are at risk of incurring damages to their persons and to their personal and/or real property in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq.*

142.    Plaintiffs, individually and on behalf of the Class, incorporate all of the foregoing allegations into this cause of action.

143.    Under the Magnuson-Moss Warranty Act, Class Members are "consumers," Cuisinart is a "supplier" and "warrantor," and the Pressure Cookers are "consumer products."

144.    Under 15 U.S.C. § 2301(d)(1), the Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

145.     Cuisinart' express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Pressure Cookers' implied warranties are covered under 15 U.S.C. § 2301(7).

146.     Cuisinart breached these warranties as described in more detail above in the First Cause of Action. Without limitation, all Pressure Cookers suffer from a common Defect that manifests in the form of the hot contents of the Pressure Cookers erupting from within and is present at the point of sale.

147.     Under the Magnuson-Moss Warranty Act, Cuisinart was obligated to disclose to Class Members the known Defect and was obligated to repair or otherwise remedy the Defect.

148.     To the extent necessary, Plaintiffs and each Class Member have had sufficient direct dealings with Cuisinart or its agents to establish privity of contract between Cuisinart, on the one hand, and Plaintiffs and each Class Member, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between Cuisinart and its retailers and subsidiaries, and specifically, of Cuisinart' express and/or implied warranties. These retailers were not intended to be the ultimate consumers of the Pressure Cookers and have no rights under the warranty agreements provided with the Pressure Cookers; the warranty agreements were designed for and intended to benefit consumers only.

149.     Cuisinart failed to meet its disclosure and remedy obligations, despite reasonable opportunity to do so.

150.     Cuisinart' violation of the Act caused damage to Class Members and entitles them to statutory relief.

## SEVENTH CLAIM FOR RELIEF
### Injunctive and Declaratory Relief
### (On behalf of Plaintiff and the Classes)

151.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

25

152.     There is an actual controversy between Cuisinart, Plaintiff, and Class Members concerning the existence of the Defect in the Pressure Cooker.

153.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.".

154.     Accordingly, Plaintiff and Class Members seek a declaration that the Pressure Cooker has a common Defect in its design and/or manufacture.

155.     Additionally, Plaintiff and Class Members seek a declaration that this common Defect poses a serious safety risk to consumers and the public.

156.     Cuisinart designed, manufactured, produced, tested, inspected, marketed, distributed, and sold the Pressure Cooker which contains a material and dangerous Defect as described herein, and continues to do so.

157.     Based upon information and belief, Cuisinart has taken no corrective action concerning the Defect, and has not issued any warnings or notices concerning the dangerous Defect, nor implemented a product recall.

158.     Plaintiff and Class Members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Defect. Cuisinart should be required to take corrective action to prevent further injuries, including: (a) issuing a nationwide recall of the Pressure Cooker; (b) issuing warnings and/or notices to consumers and the Class concerning the Defect; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Pressure Cooker.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, requests the Court enter judgment against Cuisinart, and accordingly requests the following:

A.      An Order certifying this action as a class action on behalf of the Nationwide Class and Connecticut Class;

B.      An Order appointing Plaintiff as the Class representative, and appointing the undersigned counsel as Class Counsel;

C.      A Declaration of the defect and that the warranty fails its essential purpose;

D.      An Order awarding injunctive relief by requiring Cuisinart, at its own expense, to issue corrective actions, including notification, recall, inspection, and, as necessary, repair and replacement of the Pressure Cooker;

E.      Payment to Plaintiff and all Class Members of all damages associated with or caused by the defective Pressure Cooker, in an amount to be proven at trial;

F.      An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and,

H.      Such other and further relief as this Court may deem just, equitable, or proper.

Date: August 2, 2018

By Plaintiff's Attorneys,


 /s/    Marisa A. Bellair
Marisa A. Bellair (ct23802)
mbellair@ltke.com
LYNCH, TRAUB, KEEFE & ERRANTE PC
PO Box 1612
52 Trumbull Street
New Haven, CT 06510
Telephone: (203) 787-0275
Facsimile: (203) 782-0278

-And-

Gregory F. Coleman (*pro hac vice* forthcoming)
greg@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel K. Bryson (*pro hac vice* forthcoming)
Dan@wbmllp.com
Patrick M. Wallace (*pro hac vice* forthcoming)
Pat@wbmllp.com
WHITFIELD BRYSON & MASON LLP
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

Mitchell Breit
mbreit@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

*Attorneys for Plaintiff*

28